May it please the court. Some 12 years ago, Infuturia set out to protect and vindicate the valuable rights in its license agreement with Yisum, rights that it had paid more than half a million dollars for. Its efforts at redress were delayed for years by Yisum's successful attempt to force arbitration in Israel of certain basic issues in the contract. Eventually, Infuturia took Yisum on in its own backyard and won. The license agreement was upheld. Yisum's attempted cancellation of the agreement was found to be invalid and wrongful, and the Israeli arbitrator confirmed that Infuturia was the holder of a whole host of valuable patents. Infuturia returned to the United States triumphant and sought to litigate its claims against U.S. defendant Sequus. But Sequus wrongfully removed the case to federal court. The district court refused to remand the case and improperly granted Sequus' motion to dismiss under rule... Counselor, I've got a preliminary question. What's the basis for jurisdiction here in the federal court? The basis for jurisdiction is section 205 of the... 205 is a removal statute. It's not a jurisdictional statute. That is the basis on which the case was removed to federal court. I understand that's the basis for removal, but you have to have a... Removal is simply an authorization to remove. You have to have a basis for jurisdiction. It is our position that the federal court was completely lacking in jurisdiction. Did you plead jurisdiction in your second amended complaint? I believe we did, Your Honor. I'll have to... I couldn't find it. Okay. Well, if you couldn't find it, I doubt that I could either, but I will make an attempt to... It appears to me that you may have basis in 1332, that you have diversity jurisdiction. Yes. Is that correct? There is diversity, Your Honor. Correct. So is there any dispute between the parties as to whether 1332 would be an appropriate jurisdictional basis? I don't believe there is. Obviously, though, as a formed defendant, a corporation headquartered and based in California, CEQAs would not be able to remove under the basis of 1332. 1332 is not the removal statute. 205 is your removal statute. Right. I understand. And our position is the case was improperly removed under either 1332 because they are a formed defendant or under the convention because... 1332 is not a removal statute. 205 is your removal statute. It doesn't seem to limit the privilege of removing to somebody who's not a resident of the jurisdiction, right? Yes, Your Honor. Okay. So that doesn't really seem to have anything to do with this. Well, Your Honor, it's clear the case was removed under Section 205, and we believe that it should have been remanded. But more importantly, we believe the district court improperly granted the motion to dismiss on two distinct grounds, which were both improper. That is Rule 12b-6 and Rule 12b-7. And addressing first Rule 12b-7, as the court knows, the district court held that Yisum, the Israeli entity, was a necessary party and dismissed the case on that basis. And one thing I'd like the court to take note of is that in doing so, the district court adopted verbatim the proposed order of sequence, simply crossed off the word proposed and signed the order. And this court, the Ninth Circuit, has held on numerous occasions that when a district court engages in the regrettable practice of adopting the findings drafted by a party wholesale, that this court should apply special scrutiny to the findings of the district court. And so with that special scrutiny in mind, it's our position that it was clear that Yisum was not a necessary party under Rule 19a-1, and the case should not have been dismissed on that ground. But won't your claim require some construction of the infuteria Yisum license, and won't that construction affect the parties, Yisum in particular, on other matters that may be collateral to these proceedings? Well, two answers, really. First of all, I guess the short answer would be no, in that the Israeli arbitrator has already defined the scope of the rights of the infuteria under the license agreement by identifying a certain patent, and then also saying that any other patents that emanated from that research are the property of infuteria. So the rights have already been determined as between infuteria and Yisum. But you're alleging that there are additional patents that are being infringed on by the infuteria's conduct. Yes, sir. Or Sequest's conduct, sorry. Yes, sir. Under Rule 19A1B1, however, all the district court found is that interpretation of the license agreement would be integral to the resolution of infuteria's claims. That does not satisfy the impair or impede standard under Rule 19A1. And we've cited numerous courts that have held that in a situation such as this, where any finding in this case as to the scope of the license agreement would not be binding on Yisum as a non-party, that that impair or impede standard is not met. But really, counsel, under 12B7, and I'm surprised that you're starting there, the standard of review is an abuse of discretion, correct? Yes, sir, it is. And with an abuse of discretion, if we find that under the standards that allowed under 12B7 that the court did not just abuse its discretion in making its findings, we have to affirm the court even if we don't agree, don't we? That is correct, Your Honor. And so it seems to me then that, as my colleague has been questioning you, the royalty interests that would come into play in this particular action certainly are royalty interests that are covered in an agreement between you and Yisum and then may be covered in another agreement between the party you want to sue and Yisum, and therefore, it would be Yisum in the middle of all of that as to whether it ought to be. And so now we're trying to determine that the district court did not abuse its discretion in saying that Yisum ought not be there when it's a contract between two parties, and we've got two contracts going, that being the only one, and going through the standards, it's an abuse what the district court did? Absolutely. The court did not even undertake the appropriate analysis. Its only conclusion on this first element of being a necessary party, again, was that the determination of the rights under the agreement were integral to the resolution of Infutria's claims. Nowhere did the court hold or explain how prosecution of this action in the absence of Yisum would impair or impede Yisum's ability to protect its rights. And we cited numerous cases, including the NGV gaming case, in which that court found that where a finding in one case will not be res judicata or collateral estoppel or otherwise binding on a non-party to the litigation, you can't meet that impair or impede test. But I understood that's exactly what we have in this particular matter, that people may, in fact, plead the arbitration breached in Israel in trying either to defend or do what they need to do under this case, which is collateral estoppel, which is the res judicata effect of that arbitration agreement. Right. That's correct. Sequest is pleading collateral estoppel and res judicata, or intends to, as to the arbitration award in Israel. That in no way makes Yisum a necessary or indispensable party. All that... It would certainly make it an indispensable party as to agreements that are not covered in the Israeli arbitration, isn't it? Or as to patents not covered? No, for the simple reason that any finding in this case is not binding on Yisum, and therefore they're not a necessary or dispensable party. And Sequest is simply saying to the district court, here is the arbitration award. It's in writing. It's been confirmed by a federal district court. And the only question before the district court would have been, what is the effect of that finding on infuturious claims against Sequest? That is simply a matter of interpreting the arbitration award and applying it to the scope of the claims between the litigants. That does not require the presence of Yisum to somehow argue about what the arbitration award means. The district court can... Well, Yisum will at least has royalty interests with both that could be lost in this suit, doesn't it? No, because it, again... And it would not be able to protect their interests. Well, keep in mind, Your Honor, Yisum tried to intervene in the state court and its motion intervene was denied because the court held that all of the disputes between Yisum and my client had already been decided in Israel. Those issues are finished and done and over with. The arbitrator defined the scope of the rights under the agreement, affirmed the validity of the agreement, and found that Yisum's cancellation of the agreement was wrongful. Secondly, Your Honor, it's our position that the court improperly dismissed the case under Rule 12b-6, primarily because the court wrongfully viewed this case as one of patent infringement and applied a standard to our pleadings inconsistent with the cause of action that we had alleged. In our case, we are simply alleging that Yisum, I'm sorry, that Sequis, with knowledge of the infuteria Yisum license agreement, convinced Yisum to grant the same license rights to Sequis. In other words, convince them to license the same rights twice, with knowledge of those rights. The district court... The district judge concluded that you hadn't adequately pled how the alleged infringing, or how the conduct infringed your rights under your license. And it also concluded that you'd really failed to link up any injury or damages to that conduct. And under Iqbal and Twombly, we're required to at least have some plausible facts that make that linkage. But the district court didn't see it. Where's the fatal flaw in the district court's analysis? Well, several. First of all, starting with the damage issue. The district court's order on the original motion to dismiss or for more definite statement did not require my client to expand on its allegations of damages. That was not anywhere in the order. It was not the basis of the original motion to dismiss or for more definite statement that we had not adequately alleged damages. So the court did not order us to expand on our damage allegations. But you still have to plead the elements of the tort. Certainly, and we did. It's really similar to a case where, let's say General Motors granted an exclusive dealership in Pocatello, Idaho to Company A, and then Company B came along and said, we're gonna give you a better deal. Give us the exclusive GM dealership in Pocatello. Company A was wrong because there was interference with their agreement. The district court wanted us to not just allege that, but to allege what cars has dealership B sold and what make and what color. We didn't have to identify any products because this wasn't a patent infringement case. And the damages are on the face of the allegation. The damages are clear. If we were granted an exclusive license and then subsequently the same things that were licensed to us were licensed to someone else, that is a derogation of our exclusive rights. We have lost what we bargained for in the transaction. That is the exclusive rights to these various patents. So the damage is that we didn't get what we had bargained for and what we had paid more than half a million dollars for years ago. So the court erred in both those regards in trying to convert this into a patent infringement case and saying it's not enough to say that CEQA has convinced USM to give them the same rights you already had. You have to show that they're actually manufacturing a product. That's not the law. What they converted and what they interfered with were our contractual rights under our license agreement. Whether they have produced or manufactured a product that encapsulates those license rights and those patents is not an element of proof that we have to. What are your monetary damages? Did you allege those in the second amendment complaint? We did, we alleged damages from the loss of the exclusive rights. Obviously, at the time of trial, we'll have to have expert testimony about what the value of the exclusive rights were to these patents and what the value is with that loss of exclusivity. Obviously, at the time of all this occur, we've had no discovery. We've had no discovery to figure out what did CEQA pay USM to get these rights? We've had no discovery to find out what products they may have manufactured and sold that encompass these patents, what sub-licenses CEQA may have entered into with others. So at this stage to say you can't even possibly allege any set of facts that would give you relief, we've had no discovery. But what we have shown, and we actually included in our pleadings, which we found fortuitously because we had no discovery, the license agreement between CEQA and USM that postdates our agreement that gives them this broad right to all of this liposome related technology and patents. Just comparing that agreement with our license agreement, it's obvious they got the same rights that we had already been given. And so to say that we have no possibility of showing a claim for relief under those facts, the district court erred. Well, they claim that these are unrelated liposomes and don't you have to at least show how those particular patents are linked up to the Infuturia USM license agreement? Yes, sir, and we made that allegation. We made the allegation that here are the patents that are ours pursuant to the Israeli arbitrator's decision interpreting the license agreement, and here is the agreement between CEQA and USM, which gives them the license to the exact same patents that we already have. Counsel, that's paragraph 14 of your second amended complaint. That's where you list the 10 patents, including the 314 patent. This paragraph begins on information and belief. So right away we start with something that we don't, it appears that you don't really have any facts in your possession. So you told us what the 10 patents are that you think have been infringed. You have a bare allegation that USM licensed and are assigned to LTI, which is the predecessor to CEQA's, the liposome-related pharmaceutical patents. But you haven't alleged anything that would show how USM licensed, for example, the 314 patent to CEQA's. You've given us their agreement, but their agreement is very, very broad. There's no reference to the 314 in there, or to any of the other patents that you've referred to. You're right, your honor. We have 12 years of litigation, and you don't have any direct evidence, which would be an agreement, or indirect evidence, which would be that CEQA's is marketing some kind of a product that is interfering with the patents that you hold on this. Well, your honor, first of all, the 12 years of litigation has not been, and none of that time has been spent litigating the claims between my client and CEQA's. The only thing we litigated in Israel was the fundamental validity of the license agreement, and whether it had been breached, which the arbitrator decided it had, and we have not had any discovery. Well, you did have some opportunity, because you contended that Doxil interfered, and you've now abandoned that complaint, and done so explicitly. Yes, your honor. So, this would be a really good time to tell us what's gone wrong here. What's gone wrong is we have a license agreement that we have obtained through our own means, not through any discovery, in which broad grants of license agreements to liposomes and various patents have been given to these patents. That just raises a possibility that there's been, but you could allege that against any company that had been given any rights by ISM. The fact that ISM is dealing with somebody else, and giving them some rights, doesn't mean that those rights are interfering with your rights. All we have to show, your honor, is a possibility that we can state a claim. You have to cite facts. You can't just give us a theory. You have to give us some facts. We cited the agreement that we were able to find publicly without any discovery. For which there is absolutely nothing in there that refers to 314, or to any other patent. It does not refer to any specific patents. You're correct. The second paragraph that I have trouble with, so paragraph 14 just doesn't provide any specificity. The second paragraph I have difficulty is paragraph 26, which is the heart of your tortious interference complaint. And this appears to be a well-pled, but entirely theoretical paragraph. In other words, it simply recites the elements of the cause of action. There are no facts in there. So you've alleged that CEQA has committed, and is continuing to commit, acts with the specific intent and purpose of disrupting and interfering the contractual rights. That's fine. Now, what are the facts? What are those acts? The facts of which we're aware at this time are primarily set forth in paragraph 25 regarding the relationship and the longstanding history of work between Mr. Barenholtz, who was really the one who was involved in the discovery of these liposomes, along with my client, and was involved with the execution of the license agreement, and that Mr. Barenholtz had spent years working closely in California with CEQA on the testing, development, and commercialization of the liposomes. And it's our allegation that through that relationship with Mr. Barenholtz, that CEQA's learned of the license agreement and our contractual rights. And again, we believe we're entitled through discovery to gain more information about that relationship. But it's clear that Mr. Barenholtz was the one who was on the ground in Israel working with us. He came to the United States, California, and worked with CEQA side by side. They signed an agreement with CEQA that gave them broad license rights to all of these liposome patents. And within a year or two of that, they sent us a cancellation letter canceling our contract under some excuse that they made up that the Israeli arbitrator found was not valid. So all of those facts together, we believe, give this adequate basis to make the allegations that we made. Can I ask you to turn to section 205 for a moment? The, in answering both Judge Smith and one of Judge Bybee's questions, you commented on the need for the district court to undertake a construction, as I understand your response, a construction of the Infuteria Yisum license. And, you know, that seems to me at least tacitly conceding that there's some, you know, relationship between your claims here and the, and that license. And, you know, why isn't that enough to satisfy the relates to language of the, of section 205? Well, for several reasons. One, the court in Atkins held that a non-party to the arbitration clause cannot invoke the clause to show a jurisdiction or removal jurisdiction under section 205. The court in Global Santa Fe similarly stated that. And really the issue is- How do you, you know, just stopping at Atkins, that's still the best case you have for your position. And, you know, how do you reconcile the text of the section that doesn't seem to require party status with, you know, really Atkins didn't spend a lot of time, you know, making the argument that it arises from the text. It's more of a conclusory statement. How do you link up the text of the section with the requirement that they must be a party to the arbitration agreement? Well, other courts that have followed behind Atkins, such as Global Santa Fe and Hawkins versus KPMG, have basically said that what Atkins, what the Atkins court was saying, perhaps it should have been more explicit, was sort of a shorthand for saying that the removing party could not invoke the arbitration provision and compel arbitration. And maybe they got there in a shortcut fashion by just saying they were non-party and maybe the court should have gone a little further. But in Global Santa Fe and Hawkins, the court said the issue really is can their non-party that removed, can it compel arbitration of the claims? And in both those cases, Global Santa Fe and Hawkins, the court looked at the merits of that issue and held that the removing party could not force arbitration of the claims and therefore they could not invoke section 205. Here, the district court never made any finding as to whether CEQA could invoke the arbitration clause to force arbitration of the claims. CEQA never sought to compel arbitration of these claims and the district court never analyzed the issue that the court in Atkins, Global Santa Fe and Hawkins all said you have to analyze to determine jurisdiction, which is can the non-party that removed compel arbitration under that arbitration clause in the agreement? But counselor, the district court cases that you cite to us have one district court case squarely against them and that's certain underwriters at Lloyds, which says that a federal court held where a federal court held that a pending action relates to an arbitration falling under the convention where an arbitration may provide a defense. Now here, we have such a situation. So all these district court cases that you now cite to us to interpret this statute, which says nothing about the parties to an arbitration being the only ones who can do what they need to do under the removal, has another district court's case that says in this particular matter, the arbitration may provide a defense and in that case, we certainly have a relating to action. Yes, your honor, two comments if I may. First of all, the holding in the Warrantek case was based on a rigid application of visor because the court refused to consider the merits of their moving defendants' reliance on the arbitration award as a defense. It said that it could only remand if that defense was facially frivolous. But the Northern District of California in the Hawkins case held that the merits jurisdictional distinction of visor was misleading and analytically unhelpful and said that courts are often called on to make factual inquiries to resolve jurisdiction. And the court in Hawkins did just that. The court in Global Santa Fe did just that. So courts in the Ninth Circuit, district courts have said, visor's just wrong when it says you can't weigh it into the merits. In Warrantek, all the court did was enforce that by saying we're not going to weigh in, we're not going to weigh into this issue of whether it's a legitimate defense for the removing defendant to use the arbitration award as a defense. All we're going to do is decide whether it was facially frivolous. That's inconsistent with the way courts in this circuit have looked at the issue. Secondly, our position is that it was facially frivolous because the arbitration award clearly affirmed the existence of the license agreement, held that it had been improperly canceled, and set forth the valuable rights that my client had under the agreement. None of those findings could possibly serve as a defense to sequence in this case. It was facially frivolous. That allegation is facially frivolous. More importantly, the district court erred in not analyzing that more closely, as is required under Hawkins and Global Santa Fe and Atgames to decide whether that actually does provide a valid defense to sequence as a removing party. Unless the court has any further questions, I see I'm over my time. Thank you, Mr. Pearson.  Thank you, Your Honor. Ms. Sullivan? Good morning, Your Honors, and may it please the court. My name is Kathleen Sullivan, and I represent the appellee sequence in this matter. This is a case about a contract that should have been settled in arbitration between the appellant in Futuria and Yesim, its contract partner, that is instead involved in Futuria's effort to sue anybody but Yesim in the United States. And the complaint below was properly dismissed by the district court and should lead to an easy affirmance here. I'd like to begin with the 12B6 reason for dismissal. Before you do that, is there a reason why Yesim could not be a party in this action? Yes, Judge Tinkovich. It could not be a party in this action because Yesim has an arbitration clause. So in Futuria is bound to arbitrate. Yesim can compel arbitration. It also has a foreign selection clause. So Yesim can't be joined in a state action brought by, in Futuria in California because of the arbitration and foreign selection clause. And in fact, it sought to protect its rights throughout this matter to do just that. Yesim made a special appearance in state court and that's how the arbitration took place in Israel. But just to focus on the reason, you've already focused on the reasons why there is no basis for this complaint. In Futuria comes in and says, Sequis, you stole our exclusive rights to all these liposome patents. But it failed and you tortiously interfered with our license. And after 12 years of litigation and two amended complaints, three complaints total, it's still unable to say how any of these acts of tortious interference or conversion have taken place. Now, as Judge Tinkovich and Judge Bivey have already pointed out, there's nothing in this complaint that says facts, that sets forth facts, saying why in Futuria, which started out as an anti-aging, using liposomes for anti-aging lipid replacement therapy. Liposome research is a vast field. Not all liposome research is created alike. And what Sequis is engaged in, starting with Doxil, is a very different use of liposomes. Liposomes for drug delivery into the body. The use of liposomes for drug delivery. In Futuria, it pleads nothing in the second amended complaint. Nothing in paragraph 14, as Judge Bivey pointed out, nothing in paragraph 26 that says why it should have exclusive rights in all these patents. It lists all these patents. They say they're ours. They don't do anything to connect these patents up to the 314 patent, the original lipid replacement therapy patent. They don't say anything about why these follow-on patents are connected to 314 at all. Second, well, Lizzie, you make a pretty good point that they've lacked the opportunity for discovery to really show the details of the connection and that the motion to dismiss stage were notwithstanding Duomly, were, you know, it's a pretty broad standard. Not at all, Your Honor. And here I need to correct Mr. Pearson's misdescription of what happened in Israel. They had six years of arbitration in Israel, which does allow limited discovery procedures. If Infrateria wanted to discover what liposome research Yesom had conducted with Sequis, it had ample opportunity for six years. It made a strategic choice not to pursue that discovery in Israel, but rather to sue in state court here. And so it shouldn't now complain that it didn't find out information. Now, it hasn't said why it has exclusive rights, but also notice that paragraph 14, the second amended complaint, which lists all these patents, doesn't say in any way how Sequis invaded these supposed exclusive rights. And there's two ways that Sequis could have invaded the rights of Infrateria. Either Sequis could be making, developing, and marketing products that are based on technologies and patents that Sequis owns. But Sequis, sorry, that Infrateria owns. But Infrateria hasn't alleged a single Sequis product invention or development in which Sequis is out there selling things that belong to Infrateria. It hasn't alleged a single product. But it also could say, well, we're trying to market products that follow from our license, our 314 line of products. And Sequis is coming after us and telling us we can't sell those because we own them. And they haven't alleged a single fact to support that theory of Torsch's interference or conversion either. So they haven't alleged facts supporting a right. They haven't alleged facts supporting Sequis claiming exclusive rights to something that belongs to Infrateria. And they haven't alleged that Infrateria tried to sell something they had exclusive rights to. And Sequis tried to enforce their license to stop them. Not a single fact pertaining to the acts that are essential elements of Torsch's interference and conversion, as you rightly said, Judge Tam. Is it your position that the, that those additional patents that were pleaded in the second amended complaint ought to be the subject of arbitration under the Yisim Infrateria? Absolutely, absolutely. If you compare paragraph 14 of the second amended complaint with paragraph 15 of the counterclaims in Israel, and here I have to state my strenuous disagreement with Mr. Pearson on his misdescription of what happened in Israel. He said, we won in Israel and we came back triumphant to enforce our rights in America. He's ignoring pages. If you look at the best copy of the Israeli arbitral award, it's at pages 138 to 158 of the excerpts of record. And he's ignoring and wiping out pages 148 to 158, which is where Infrateria lost the Israeli arbitration. They lost on their counterclaims. Remember what they did. They counterclaim once they're forced into arbitration they should have been in the first place. And they said, oh, as Judge Bivey noted, they say, oh, we own Sequis' product, Doxil, that's part of 314. They lost that claim in the words of the Israeli arbitrator completely. Page 148, we completely reject, we completely reject Infrateria's counterclaims because pages 151 and 152, Doxil has nothing to do with the 314 patent. Doxil's in a world of drug delivery liposomes. The 314 patent is in a world of lipid replacement liposomes. They have nothing to do with each other. Pages 151, 152 of the Israeli arbitral award, nothing to do with each other, either as to the compounds involved or as to the timing of the research. Doxil research preceded anything Infrateria paid the ISM to do. Now, how you can call that a win and how you can call that a victory that you came home to enforce in an arbitral award is beyond me. It's a flat loss. And Judge Smith, as to the way in which we, Sequis, might plead collateral estoppel, we would plead collateral estoppel based on the Israeli arbitrator's decision. Infrateria doesn't own anything to do with Doxil or anything to do with Doxil-like products, including possibly, Judge Timpavit's, the five patents that they now allege for the first time. If you compare. They pretty much conceded that in their complaint. I mean, it's an extraordinary sentence. I don't think I've ever seen a sentence in there that says we're complaining about a lot of stuff, but we're not complaining about Doxil. Yes, Judge Breyer, they abandoned Doxil and yet the five additional patents they've now pled, as supposedly to do with 314, they haven't alleged any reason to think that those new patents have to do with their technology, lipid replacement therapy under 314, as opposed to our technology, Doxil. So even though they've abandoned Doxil, they've pleaded five new patents that we think we might be able to collaterally estop them from claiming any right to, because those patents might be follow-on to Doxil-type technologies, at least some of them. And we're getting deep into the merits. The key point for present purposes is they had ample opportunity to find out what CEQA's had that they thought was rightfully theirs during the Israeli arbitration. They lost the Israeli arbitration flatly on their counterclaims that they owned anything to do with CEQA's collaborative research with Yesim. And that is a potential basis for collateral estoppel later on. So this is so far short of a properly pleaded complaint after Iqbal and Twombly that it doesn't come close. And if we add to that the fact that we're now at an abuse of discretion standard to review under 12b-6, as well as 12b-7, there can be no basis for reversing the district court. Remember, we're under abuse of discretion because the district court, and my colleague, Mr. Pearson, disparaged the district court for just signing our proposed order. He's ignoring, of course, the fact that the district court wrote a lengthy opinion at ER 5 to 16, in which he said, in reviewing the first amended complaint, where is the factual basis for this complaint? Please go and replete it. Give us a more definite statement. And she expressly ordered Mr. Pearson and his client to come forward with facts showing acts of tortious interference. Facts showing that there was any product that they owned that was converted. And they violated that order. So under 41b, the failure to follow a court order were under abuse of discretion. And under this court's decision- Can I really turn on whether the district court was correct in demanding those facts? If the district court said, look, I want you to hop on one foot when you file this complaint, and they didn't do that, that would be violation of an order, but it's not necessarily a legitimate order or an order that has a basis in the federal rules. Judge Biby, the order was entirely correct because the first amended complaint was deficient for all the same reasons the second amended complaint was. First amended complaint didn't have anything in it about what products- Then the defense really has to be on the basis of the federal rules and not on the basis that infutury has violated the district court's order. Fair enough, Your Honor, but abuse of discretion would still apply in this case under McHenry versus Rennie, in which this court said that in repeated failures to, after you're given leave to amend, the failure to give subsequent leave to amend to correct a confusing complaint leads to abuse of discretion at that point. However, in reading the district court order, I really didn't see any place in there where they exactly, where the district court exactly says, this is for failure to comply with the court's order. Fair enough, Your Honor, if you want to ignore- And I've read McHenry, and you know I'm a kind of a standard review kind of person, so I was reading for this kind of stuff, but I'll be fair, reading McHenry and then reading this case and reading what the district court said, I'm having a tough time getting to abuse of discretion. Your Honor, I'm happy to go up on de novo review of the 12B6 decision because it is so plainly correct, and you, upon reviewing the First Amendment complaint, which alleges none of the elements of acts and tortious interference and conversion, before we even get to damages, you would find that the district court correctly dismissed, even if you're on de novo review. 12B7, equal grounds for affirmance, you need not reach it because 12B6 is so plainly correct, but 12B7, Judge Smith, not only was Yisum a necessary and indispensable party here for the reason you gave, Yisum might lose royalties. Yisum might walk in, it might be sitting there thinking it's going to get royalties from Sequis, is that their marketing a successful product, and along comes the state court and says, no, those rights belong to Infutoria. That's exactly the kind of situation 19A1B1 contemplates, but Your Honor, Judge Smith, there's a second reason why it's an indispensable party, and that's 19A1B2. The Sequis, we might be subject to multiple and inconsistent obligations. If Infutoria is telling us we owe them damages, and Yisum, who my colleague Mr. Pearson just said wouldn't be bound by any decision here on res judicata, if Yisum says pay us royalties, we may owe royalties and damages on the same patent. So 12B7 is an alternate ground for dismissal, and you correctly said that's on abuse of discretion, and it's independently sufficient. The grounds for affirmance on 12B6 and 12B7, that there's no there there in the complaint, and this is a case that should have been arbitrated with the contracting party, Yisum, not brought to our courts. The grounds for affirmance are so strong that I think all that is really before the court is the question Judge Bybee began with, which is, is there jurisdiction for the federal court to have issued these two plainly correct bases, independent bases for dismissal? And there, I'd like to just, if I could, focus on why this jurisdiction in the district court was plainly correct, and why the removal was proper, and the denial of remand to state court was proper. Now Judge Bybee, to begin with your question, what was the basis for jurisdiction in the district court? It has to, it's under FAA Section 203. There's federal subject matter jurisdiction over a claim that falls under the New York Convention. Section 203 is clearly a jurisdictional section, but I didn't think that this lawsuit qualified under 203, because that must be an action or proceeding falling under the convention. And I don't see how this is a lawsuit falling under the convention. Your Honor, it is a lawsuit falling under the convention. Let's start with what's required to fall under the convention, just that there be foreign parties to a commercial contract containing an arbitration clause. We have two foreign parties in Futuria and Yisum who have the arbitration clause, both foreign companies, and it's clearly a commercial contract. There's no arbitration clause between the two of them. Between Futuria and Sequest. That's correct, but that only goes to the question of whether a non-party can invoke the removal statute. But let's just focus on why we're under the convention. We're under the convention because two foreign parties have a commercial contract that contains an arbitration clause. And just to go back to why this relates to an arbitration. What it relates to is 205, which is a removal statute and not a jurisdictional statute. The removal statute is much broader in permitting removal than 203 does in conferring jurisdiction. Nothing in, falling under does not depend on both parties to the litigation having an arbitration agreement between them. Falling under depends on there being an agreement that relates to the subject matter. Do you have any authority for that? That just feels like we're in uncharted territory on that one, that falling under is the equivalent of relates to. Well, I think statutes have to be read with their parts together. If you put 202, which tells you about who falls under the convention, together with 203 that says there's subject matter jurisdiction where there's falling under, with 205. As I said, 205, it could be much broader because it would allow the possibility, for example, in this case, if you had diversity jurisdiction, and if diversity were the basis for jurisdiction, 205 might still authorize the removal to federal court, even if you didn't have original jurisdiction under 203. Well, CEQAS is headquartered in California, so there would be a problem with trying to allege diversity jurisdiction. Let me just go back and try to explain the related two-point, and then we'll get to the non-party point for a moment. I'm sorry, why would CEQAS, why would that, that would defeat, you don't have diversity here? What's the problem with CEQAS being in, headquartered in California? We couldn't have removed based on diversity. Why, no, you couldn't have removed based on diversity. What I'm saying is you could have diversity jurisdiction. I mean, I'm sorry, you could, you can, you can remove on the basis of 205 because it relates to, and the basis for jurisdiction in the federal court would still be 1332. You don't have to rely on, I think it's 1441 is the standard removal statute, isn't it? That's, yeah, we don't need to rely on 1441. Yeah, you don't need 1441. But since my time is short, could I just try to explain why we relate to, assuming that you find jurisdiction and you get to the relate to question. The simplest reason why the subject matter of the claims here relates to the arbitration agreement or the contract containing the arbitration agreement is in Futuria's own pleadings. You don't even have to get to collateral. Well, I don't have any question about what that relates to. My problem is where does the jurisdiction? And if there is diversity within there, you could remove under 1441. Correct. Well, isn't that your problem? But isn't that the problem that you were raising that they're headquartered in California, which under 1441 would not allow them to remove? Correct. Okay, so then you would have to rely on 205 as an independent basis for removal. Correct. That's correct. And that's our position. So you really have to patch together a 1332-205 jurisdiction and removal rather than any other combination of statutes. Sure, but we think we do because 205 removal was proper here. And it would defeat the New York Convention. Let's remember why we have the New York Convention. We want arbitration between foreign parties or foreign parties and one domestic party to be handled in federal court. Why? Out of comity and respect for foreign arbitral awards and out of a desire to have uniformity and interpretation of contracts. Now, Judge, I'm glad you agree that this relates to, I mean, a great deal of Infutoria's complaint, both the First Amended Complaint and the Second Amended Complaint. Paragraph 31 to 41 of the first, 134 to 135 of the first, and paragraph 17 to 22 of the Second Amended Complaint. Infutoria expressly relies on, and Judge Timkovich, as you correctly pointed out, seeks to have a state court interpret a foreign arbitral award. They want it to be interpreted to give them rights to patents where they haven't claimed any possible connection to 314. So there's no question it relates to, the subject matter of the claim relates to an arbitration agreement that falls under the New York Convention. You don't even have to get to collateral estoppel, but that just gives you another leg to the stool because obviously we would rely on the Israeli arbitral award for the part we want. Although not so fast, it seems like, you know, without some, you know, kind of relationship among the party, among the people that have signed the arbitration agreement, it seems, you know, the breadth of your reading of the statute would bring in a lot of cases with really collateral and, you know, very tenuous connections to arbitration into the federal court, you know, to their credit, and at games seems to provide a little bit of a narrowing that, you know, keeps the federal lawsuit focused on arbitration award without all these collateral consequences. I worry about the breadth of the interpretation you're proposing. We're not proposing a broad interpretation. I understand the concern, but our case is at the core. It's not at the periphery. This is a case in which there's an award that came down in Israel under the arbitration, which is where Infutura should have gone and stayed in the first place. That award distinguishes this case from at games. At games does not involve relating to an award. It involves relating to an agreement, and in at games there is- Why is that a critical distinction, the award versus the agreement? Let's say, you know, it was still pending in Israel. Well, it narrows the argument, Your Honor. There will be few cases in which someone is sent to arbitration abroad where they should be and come back and have the audacity to replete a state claim that was sent off and to claim that they'd won in the arbitral award. In the rare case in which the ballgame starts over again because a new amended complaint with new claims, with claims of conversion, dropping doxil, adding five patents, a whole new ballgame has started, and there's a prior arbitration award, that will be a rare circumstance in which we think Beiser gave you one instance of when you should allow a non-party to remove. This is clearly another, and it doesn't open up the floodgates because this will be a rare circumstance. We're not saying everyone with a tortious interference defense to a contract is going to be able to remove in the future, but where there's a prior award, this case can be affirmed narrowly. That distinguishes At-Games. And Beiser, the reason for that, let's go back to first principles, this text of the statute, Judge Timkovich, I believe you correctly suggested earlier, At-Games got it wrong. At-Games said that 205 requires parties to the arbitration to be the parties to the action, and that's not what 205 says. 205 says that a defendant may remove where the subject matter of the action relates to an arbitration agreement falling under the convention. When Congress wants to talk about parties, it knows how to do so. If you look at 202, it's talking about citizens of one country and another with respect to their relationship to the agreement. 205 clearly omits to say defendants who are parties to the arbitration may remove. Congress could have done, so it didn't. So the plain language of the statute cuts exactly against At-Games, that it would be helpful for this court to clarify for future district court guidance that At-Games got 205 exactly wrong. But we don't think it opens up plug gates because this is a rare case in which you can say removal was proper under 205 because of a prior award. And in this case, the award, contrary to Mr. Pearson's representation, I can't emphasize this forcefully enough, the award favored Yesom and favored Sequis's argument that the patents they're now claiming without anything more than information and belief belong to them had nothing to do with their license agreement for the 314 patent. So enforcing comity and uniformity with respect to an award that's come down is an important policy goal here and justifies your affirming the removal basis here for allowing Sequis to remove. Just leaves us with one last question. And that is, was Sequis too late in removing to be timely under 205? That's another argument they make in their briefs, Mr. Pearson didn't make it today. Obviously it was timely. 205 says that there must be removal before the trial thereof. Thereof refers to the subject matter of the claims. The first time they hit us with all these claims about conversion, abandoning doxil, naming five new patents and relying on the award is after the 2006 award. We removed immediately before an answer, before any adjudication on the merits. We removed immediately and therefore were timely relative to the adjudication on the merits of any claims against us. And Mr. Pearson has said in his briefs that somehow the adjudication in Israel adjudicated claims against Sequis. Well, that can't be right because Sequis wasn't a party to the arbitration in Israel. So we were timely. This is a case in which a non-party should be permitted to remove. This court should, we believe, adopt the general policy and principles in reading of 205 in visor, the Fifth Circuit's or sister court's decision and extend it to the rare case in which there's a relation to an award and therefore the district court's jurisdiction was proper here and the award was properly, the complaints were properly dismissed. Just, I know I'm over my time. This is just a case that should have been arbitrated. It's a contract dispute. As far as any unfairness to Infuteria, there's no reason to worry about that. They made the strategic choice not to exploit all the discovery they could have had in the Israeli arbitration award to sue everybody but Yisum, their contract partner in the United States, to try to re-litigate claims that they still haven't connected up in any way to the elements of the causes of action they plead. This case was properly dismissed by the district court and we respectfully request that the court affirm. Thank you very much. Mr. Pearson, I'll give you a couple of minutes. Thank you, Your Honor. Just a minute. Why don't you put, let's put three minutes on. Thank you, Your Honor. Very quickly, the arbitration award was a win. Yisum required the arbitration claiming that the license agreement was no longer valid and had been breached by Infuteria. That was the genesis of the arbitration. We won that. The court held the license agreement was valid. They seek that Yisum had wrongfully canceled the agreement. Yes, we lost Doxel, but Doxel wasn't in our amended complaint. We specifically stated we were not suing under Doxel. I do want to talk about the relates to, because respectfully, I believe that the relates to standard hasn't been met here. What the court in Ad Games was saying, and the Hawkins Court sort of explained this, was that in order to show relates to an arbitration agreement or an arbitration clause, a non-party has to show that it can force the arbitration of the claims against it. That's what the court stated in Global Santa Fe. That's what the court stated in Hawkins. And what the district court here didn't decide, the district court here did not decide, and CEQAS never even pledged. CEQAS did not say the claims against us are subject to arbitration. Now, the Israeli, we had previously sued Hebrew University and Mr. Bernholz. They did claim that. CEQAS never claimed that the claims against it were subject to arbitration, and the district court never found that they were. In Hawkins, the Northern District of California stated that in order to establish jurisdiction, defendants must show that there's a reasonable possibility that defendants will be able to assert the arbitration clause to compel arbitration of the plaintiff's claims. That's the standard. Now, again, Ad Games maybe took a shortcut to get there, but that's what it held. The district court never made a finding, and there was never an appropriate pleading by CEQAS saying the claims against us are subject to arbitration. They didn't join in the motion to stay and compel arbitration. They never made that claim, and the trial court never made the appropriate finding. Likewise, the court- There has never been a circuit court that I can tell who has come down on the same place that these trial courts have come down that you now cite. In other words, the trial courts that you now cite want to add a provision into that statute, which isn't there, that they've got to be parties to the agreement. The total language of that is relates to, we don't have anything about they've got to be parties to the agreement in the statute, do we? Where do I find that language? I mean, that's the big problem with your argument. And then, therefore, we go to all the district court cases, and again, we come back to this same situation where if the arbitration is going to be a defense, we've got district court cases saying, in that situation, it certainly relates to. But the court, the case they rely upon, the Warren Tech Court, the court refused to wade into the merits of that dispute. The courts of the Ninth Circuit have said that that merits jurisdictional distinction from visors invalid, that it's appropriate to look at the merits. And the district court never stated in its findings that Sequis had shown that the award would provide a defense. And clearly, Your Honor, from discussing it earlier, noted that we're not suing on doxil. The only win they could point to was doxil. We're not suing on doxil. There's no way that the arbitration award provides a defense to our claims against Sequis. And there's no way that they have shown, and the district court didn't find that they had shown, that they could invoke the arbitration clause. And again, Your Honor, I understand what you're saying about at-games was wrong because it has this party-non-party distinction. But again, what the cases that followed at-games, Global, Santa Fe, and Hawkins said was, at-games was right because the issue is, are these claims subject to arbitration? And can you force a non-party, can you force arbitration when you were not a party to the agreement? And both Global, Santa Fe, and Hawkins said, if the answer is no, unless Sequis can show that it could compel arbitration of the claims between us, then you have not met the relating to standard. And that's not inconsistent with BISER because of the unique factual situation in BISER that even courts in the Fifth Circuit, including the Lloyds Underwriters Court said, you have to take BISER under its facts, which were very unusual and limited, where the removing defendant actually signed the arbitration agreement and was the sole employee and officer. Well, but in effect, BISER did not have the parties to the agreement who were there fighting. It was a different party who was suggesting that that had all to do with whether he should be involved in that particular matter. Now, coming to the final result, he may have got there if in fact, if you split the corporate hairs and get down to him, but we've got a similar situation here where a party who is not a matter to the agreement, nonetheless is arguing what you're arguing. We've got a relates to, BISER did what they had to do. I would just say, Your Honor, that the district courts in this circuit have said that in order to show the relates to, it's not enough to simply point out the existence of the arbitration agreement. The removing defendant here, sequence has to show the claims against it are subject to arbitration. They never pled that, they never made that showing, and the district court never made that finding. So under those cases, even if you put aside the narrow holding of Matt Gaines, which dealt with the party, non-party distinction, and look at global Santa Fe and Hawkins where the issue was, can they invoke the arbitration provision to force arbitration of our claims against them? They didn't meet that standard either. They didn't even try to meet that standard and the district court never even addressed it. So they had the burden of proof to show jurisdiction. They had the burden to show removal was proper. Under 205, as Your Honor pointed out, because they're a California corporation, the only way to remove is under 205. They couldn't get there through diversity because they couldn't remove because they were a California corporation. So without 205, there's no jurisdiction in the district court. The district court should have remanded this case to state court. Thank you, Your Honor. Mr. Pearson, we thank both counsel for the argument and for the care that you brought to our argument today. I think it was very helpful. And with that, the court stands adjourned.
judges: Bybee, Tymkovich, Smith N. R.